IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOAN M. MAVRINAC, M.D., M.P.H., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:04-cv-1880 |
| | ) | |
| EMERGENCY MEDICINE ASSOCIATION | ) | Judge Thomas M. Hardiman |
| OF PITTSBURGH (EMAP), MERCY | ) | |
| HOSPITAL OF PITTSBURGH, | ) | |
| PITTSBURGH MERCY HEALTH | ) | |
| SYSTEMS, and BRUCE A. MACLEOD, | ) | |
| M.D., FACEP, individually and in his official | ) | |
| capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

Plaintiff Joan M. Mavrinac, M.D., M.P.H. (Mavrinac) brought this age and gender

discrimination suit against her former employers, Emergency Medicine Association of

Pittsburgh (EMAP), Mercy Hospital of Pittsburgh (Mercy), and Pittsburgh Mercy Health

Systems (PMHS), and her former supervisor, Bruce A. MacLeod, M.D., FACEP (MacLeod).

Mavrinac alleges discrimination throughout the course of her employment that resulted in a

reduction in work hours, denial of a promotion in 1997, denial of a request for a raise in July

2003, and discriminatory pay practices, all of which eventually culminated in her termination.

She also alleges state tort claims, specifically defamation.  Presently before the Court are

Defendant EMAP's and Defendant MacLeod's motions to dismiss the complaint for failure to

state a claim upon which relief may be granted. Alternatively, EMAP requests a more specific

complaint.

**I. Facts**

Plaintiff Mavrinac has been a practicing physician for 22 years who had, until recently, been employed by Defendants EMAP and Mercy as an attending physician in the pediatric emergency center.  Defendant EMAP is a non-profit organization associated with the Pittsburgh Mercy Health System that provides emergency medicine staffing for Mercy as well the other hospitals within PMHS, including:  Mercy, Mercy North Shore, and Mercy Jeannette Hospitals.  Defendant MacLeod is the Chief Executive Officer of EMAP, Chair of the Department of Emergency Medicine at Mercy, and was Mavrinac's direct supervisor at all relevant times.

Mavrinac was employed at Mercy without incident from 1991 until 1997.  In 1997, Mavrinac applied for and was denied promotion to Interim Chief Physician of the Division of Pediatric Emergency Medicine, which she claims would have led to the position of Chief Physician of the Division of Pediatric Emergency Medicine.  She claims that EMAP first offered the interim position to Dr. James Kelley, a male physician who had less seniority than Mavrinac and who was not board certified in pediatrics or pediatric emergency medicine.  After Kelley declined the offer, MacLeod was selected as Interim Chief Physician.  Mavrinac claims MacLeod was not board certified in either pediatrics or pediatric emergency medicine.

In 1997, Mavrinac obtained her board certification in emergency medicine.  Since that time, Mavrinac claims that she has been denied a yearly $5,000 bonus given to physicians who are board certified.  The bonus is not required by law or organization policy, but once given, raises the physician's base salary and affects salary increases, pension contributions, and overtime pay.  Mavrinac alleges that she was unaware that such bonuses were given until 2003. In addition, Mavrinac requested a raise in July of 2003, but was denied.

Throughout her employment, Mavrinac was denied participation in the Relative Value Unit (RVU), a pay incentive system that rewards productivity.  Physicians in the RVU program may earn additional compensation up to 50% of their base salary.  According to Mavrinac, the only physicians excluded from the RVU incentive system were herself and an Iranian male who worked in the pediatric emergency center.

On November 5, 2003, Mavrinac was informed that her full-time employment would soon be terminated.  Although the Department of Emergency Medicine at Mercy Providence Hospital closed in December 2003 and EMAP was under contract to provide emergency physician staffing there, Mavrinac contends that this closing did not affect the emergency departments of Mercy Hospital of Pittsburgh and, in particular, the pediatric emergency center where she worked.

In January 2004, the RVU program was offered to pediatric emergency center physicians one month before the end of Mavrinac's full-time employment.  Mavrinac was denied a severance package after Mercy represented that terminated employees would receive severance. On February 28, 2004, Mavrinac was terminated from her full-time position in the pediatric emergency center at Mercy.  Following her termination, Mavrinac was initially given part-time work with Mercy from February 28, 2004 until June 30, 2004, which resulted in a reduction in hours from 108 to 36 hours per month and a loss of all benefits.  Since June 2004, Mavrinac has taken some part-time work at the request of EMAP.  However, this part-time work is without the accompanying benefits, affiliation with the EMAP practice, or other perquisites of her previous employment.

Mavrinac claims that her termination was the culmination of years of discriminatory treatment, including the devaluation of her skills and education in comparison to both male and

younger colleagues, denial of promotions, and reduced and/or denial of incentive pay opportunities.  Following her termination, sixteen other full-time emergency department physicians, including fourteen men and two women, were retained despite the fact that Mavrinac had been working for EMAP and Mercy longer than any of them.  Of these physicians, two had worked only with pediatric patients while Mavrinac has worked with both adults and children.  Six of the sixteen retained full-time physicians are under forty years of age and four of those sixteen have been employed by the Defendants for less than two years.  Three male physicians were retained in part-time positions even though Mavrinac had more seniority than two of them.

Finally, Mavrinac alleges that Defendant MacLeod acted in a demeaning and discriminatory manner toward her throughout the time she was employed by EMAP.  Mavrinac claims MacLeod told her, in a meeting in the summer of 2003, that working in the emergency department might be a "little too overwhelming for her," despite the fact that Mavrinac had worked in the department for over a decade.  MacLeod often referred to her as "Joan" or "Mavrinac" instead of "Doctor" or "Dr. Mavrinac" while he introduced his male colleagues as "Doctor."  At a dinner, MacLeod introduced his male colleagues from EMAP to other physicians but failed to introduce Mavrinac.  MacLeod told Mavrinac to "quit being so maternalistic" when she questioned his care for a patient.  MacLeod never told Mavrinac that EMAP paid a $5,000 yearly bonus for obtaining board certification in emergency medicine.  Once Mavrinac learned of the bonus and requested it, MacLeod denied her request stating that she did not possess the proper board certification.

Mavrinac filed a complaint with the Equal Employment Opportunity Commission (EEOC) on May 3, 2004 against EMAP, Mercy, and PMHS alleging gender and age discrimination.  She did not file a charge specifically naming Defendant MacLeod, however.

4

The EEOC investigated the charge and Mavrinac received a right to sue letter on September 21, 2004.  She commenced the present action on December 15, 2004.

This Court has original jurisdiction under 28 U.S.C. §1331 to hear federal questions such as those presented in the complaint and exercises supplemental jurisdiction over Mavrinac's state law claims pursuant to 28 U.S.C. §1367.


## II.  Discussion

### A.  Standard of Review

Rule 12(b)(6) motions challenge the legal sufficiency of the complaint.  *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  A plaintiff is required to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist." *Id.*  "A motion to dismiss pursuant to Rule 12(b)(6) may be granted only if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, the plaintiff is not entitled to relief." *In re Rockefeller Ctr. Properties, Inc.*, *Sec. Lit.*, 311 F.3d 198, 205-06 (3d Cir. 2002) (citations omitted).  Although the Court will accept well-pleaded allegations as true for purposes of the motion, it need not accept unwarranted inferences or unsupported legal conclusions cast in the form of factual allegations. *See In re Burlington Coat Factory Sec. Lit.*, 114 F.3d 1410, 1429 (3d Cir. 1997).

Generally, "to the extent that [a] court considers evidence beyond the complaint in deciding a Rule 12(b)(6) motion, it is converted to a motion for summary judgment." *Anjelino v. New York Times Co.*, 200 F.3d 73, 88 (3d Cir. 1999).  However, in resolving a 12(b)(6) motion to dismiss, a court may look beyond the complaint to matters of public record, including court files and records, and documents referenced in the complaint or essential to a plaintiff's claim

which are attached to a defendant's motion. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Under this standard, administrative filings, such as the record of the case before the EEOC, may be considered by the court without converting the motion to dismiss into a motion for summary judgment. *See Pension Benefit Guar. Corp.*, 998 F.2d at 1196-97; *Arizmendi v. Lawson*, 914 F. Supp. 1157, 1160-61 (E.D. Pa. 1996).

Rule 12(e) motions allow a party to request a more definite statement before drafting a responsive pleading when, "[a] pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed. R. Civ. P. 12(e). Motions for a more definite statement arise in "the rare case where because of the vagueness or ambiguity of the pleading the answering party will not be able to frame a responsive pleading." *Schaedler v. Reading Eagle Publ'ns Inc.,* 370 F.2d 795, 798 (3d Cir. 1967). The motion for more definite statement should point out the defects complained of and the details that would need to be pleaded in order to allow the answering party to respond. Because of the liberal pleading requirements of the Federal Rules of Civil Procedure, motions under Rule 12(e) are not generally appropriate and, "[o]nly when the pleading is so vague or ambiguous that the opposing party cannot respond, even with simple denial, in good faith without prejudice to itself is it appropriate for the Court to grant a motion under Rule 12(e)." *Trustees of the Nat'l Elevator Indus. Pension, Health Benefit, and Educ. Funds v. Cont'l Elevator Co., Inc.,* 1999 U.S. Dist. LEXIS 7062, *13 (E.D. Pa. 1999)(internal quotations omitted). As such, Rule 12(e) motions for a more definite statement will not be granted when the detail sought is within the movant's knowledge.

Finally, the United States Supreme Court has held that employment discrimination cases are not held to a heightened standard of pleading and the complaint need not contain specific

facts establishing a *prima facie* case.  The complaint need only contain a short and plain statement of the claim showing that the pleader is entitled to relief.  *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002).

### B.  Gender and Age Discrimination Claims under Title VII and the ADEA

Plaintiff Mavrinac claims EMAP, Mercy and PMHS engaged in gender discrimination (Count I) and/or age discrimination (Count II) by failing to promote her in 1997 when she applied for the Interim Chief and Chief Physician positions in the Division of Pediatric Emergency Medicine.  She complains that Defendants denied her yearly bonuses given to board certified physicians from 1997 to 2004 and excluded her from the RVU incentive pay system due to her gender and/or age.  Mavrinac also claims she was denied a raise in July 2003 because of her gender and/or age.  Lastly, Mavrinac contends that her reduction of hours and termination from full-time employment on February 28, 2004 was discriminatory.

Defendant EMAP contends that the 1997 non-promotion and the denial of yearly bonuses beginning in 1997 cannot serve as the basis for a gender or age discrimination claim because they are time-barred.[1]  In a dual filing jurisdiction such as Pennsylvania, a plaintiff is allowed 300 days from the date of the alleged discrimination within which to file a charge of employment discrimination with the EEOC.  *See* 42 U.S.C. §2000e-5(e).  EMAP argues that since Mavrinac's EEOC charge was filed on May 3, 2004, any Title VII claims based on events that occurred before July 6, 2003 are time-barred.  In reply, Mavrinac argues that the alleged

---

[1]  EMAP does not argue that Mavrinac's claims for discriminatory discharge and reduction of hours are time-barred, as they occurred within the 300-day filing period.  Likewise, the Court finds that Mavrinac's failure to receive a raise in July 2003 appears to be within the statutory period.  Accordingly, Mavrinac will be permitted to pursue these claims through discovery.

discriminatory practices were not single and discrete acts, but instead constituted continuous, ongoing discrimination which are timely under the "continuing violation" theory.

The continuing violation theory allows a claim for discriminatory conduct that began prior to the filing period if a plaintiff can show that the act is part of an ongoing practice or pattern of discrimination. *Brenner v. Local 514, United Bhd. Of Carpenters and Joiners of Am.,* 927 F.2d 1283, 1295 (3d Cir. 1991). However, the plaintiff must show two things in order to claim the benefit of this equitable tolling: (1) at least one act occurred within the filing period; and (2) the harassment is not the occurrence of "isolated or sporadic acts" of intentional discrimination but "a persistent, on-going pattern." *West v. Philadelphia Elec. Co.,* 45 F.3d 744, 754-755 (3d Cir. 1995).

In applying the second prong, the Court will consider several factors in determining whether a continuing violation exists: "(1) subject matter – whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency – whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence – whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate." *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001). "The consideration of 'degree of permanence' is the most important of the factors." *Id.*

Although Mavrinac could have alleged a claim for discriminatory failure to promote in 1997, that claim is nonetheless time-barred because she cannot show that the 1997 denial of promotion is part of a continuing discriminatory practice. The Supreme Court has held that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are

easy to identify" and that "[e]ach incident of discrimination and each retaliatory adverse

employment decision constitutes a separate actionable unlawful employment practice.

*AMTRAK v. Morgan,* 536 U.S. 101, 114-15 (2002)(internal quotations omitted).

       The continuing violation doctrine does not apply with regard to Mavrinac's 1997 denial

of promotion because it cannot be sufficiently related to another act that occurred within the

statutory time limit.  Nor does the Court find any merit in Mavrinac's argument that the denial of

promotion is part of "general discrimination" against her, which would permit acts that occurred

outside the time requirements to be considered under the continuing violation theory.  The 1997

failure to promote was a discrete act which put Mavrinac on notice of her right to bring a charge

if she believed that the decision was based on discrimination.  Accordingly, this act cannot serve

as the basis of a discrimination claim because it is time-barred.

       Second, Mavrinac alleges that she was denied a yearly $5,000 bonus from 1997 through

2004 and that she was excluded from the RVU pay system from January 2002 until her

termination in February 2004.  EMAP contends that these claims are time-barred as well.  Here,

the Court disagrees.  Mavrinac's exclusion from the RVU pay system appears to meet the

criteria outlined above for a continuing violation and she may pursue this allegation as the basis

for her discrimination claims through discovery.  As to the yearly bonuses, Mavrinac contends

that she inadvertently learned that they had been given to other physicians but does not state

when she obtained this knowledge.  She argues that this information had been withheld from her

by Defendant MacLeod and the denial of these bonuses impacted her salary, pension and

overtime pay through the time she was terminated.  Considering the allegations in the complaint

in the light most favorable to the Plaintiff, the Court finds that Mavrinac should be permitted to

explore these allegations through discovery.

Finally, with regard to Mavrinac's claims of "general discrimination" under Title VII or the ADEA, the Court must dismiss this claim because such allegations are insufficiently specific to provide Defendants with notice of the basis of the claim.  *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002).  Therefore, any claim of "general discrimination" will be dismissed as a matter of law.

### C.   Gender and Age Discrimination Claims under the PHRA

In support of her claim under the Pennsylvania Human Relations Act (Count III), Mavrinac repeats the allegations she made in support of her Title VII claim.  Defendants EMAP and MacLeod argue that Mavrinac's PHRA claim should be dismissed because she commenced this suit less than one year after she filed her EEOC charge (which was cross-filed with the PHRC), contrary to 43 Pa. C.S.A. §962©)(1), which grants the PHRC one year of exclusive jurisdiction to investigate and resolve claims.

In deciding whether a right-to-sue letter from the EEOC is a condition precedent to filing suit in federal court, the Third Circuit has held that although a right-to-sue letter is a condition precedent to filing Title VII and ADA suits, the failure to obtain one is a defect cured by issuance of the letter after the complaint has been filed.  *See Gooding v. Warner-Lambert Co.*, 744 F.2d 354, 358 (3d Cir. 1984); *see also Molthan v. Temple Univ.*, 778 F.2d 955, 960 (3d Cir. 1985) (district court did not abuse discretion in considering retaliation claim when EEOC issued right-to-sue letter after complaint was filed but before trial began).  The same logic applies to right-to-sue letters from the PHRC.  Pennsylvania courts have generally interpreted the PHRA in accordance with the standards applied to claims brought under Title VII.  *See, e.g., Knabe v. Boury Corp.*, 114 F.3d 407, 410 n. 5 (3d Cir. 1997); *Hoy v. Angelone*, 691 A.2d 476, 480 (Pa.

Super. Ct. 1997).  Prior to commencing this action, Mavrinac received a right-to-sue letter from

the EEOC on September 21, 2004.  On April 5, 2005, the PHRC issued a notice of final

disposition of her charge.  At this early stage, Defendants cannot show that they are prejudiced

in any manner and Mavrinac's receipt of the PHRC's final disposition is sufficient to cure her

premature claim in this Court.  Therefore, Defendants' motion to dismiss Plaintiff's PHRA claim

for failure to exhaust administrative remedies will be denied.


*D.  Pennsylvania Common Law Claims*

In Count IV of her complaint, Mavrinac asserts a capacious claim against all Defendants

for violations of Pennsylvania common law.  Because there is no common law claim for

discrimination, however, Defendants argue that Plaintiff's complaint does not provide adequate

notice regarding the claims she asserts.  In her reply brief, Mavrinac concedes that defamation is

her only common law cause of action and contends that she has satisfied general notice pleading

requirements for that claim.

Although Mavrinac is correct that notice pleading standards apply in federal court, an

exception to the general rule applies when the complaint attempts to state a "traditionally

disfavored" cause of action, such as defamation.  Under Pennsylvania law, to support a claim for

defamation plaintiff must allege: "(1) a defamatory communication; (2) pertaining to the

plaintiff; (3) published by the defendant to a third party; (4) who understands the communication

to have defamatory meaning with respect to plaintiff; and (5) that resulted in plaintiff's injury."

*Mansmann v. Tuman*, 970 F. Supp. 389, 396 (E.D. Pa. 1997).  The complaint on its face must

"specifically identify what allegedly defamatory statements were made by whom and to whom."

*Ersek v. Twp. of Springfield*, 822 F. Supp. 218, 223 (E.D. Pa. 1993), *aff'd*, 102 F.3d 79 (3d Cir.

1996). Whether those statements are capable of defamatory meaning is a question of law for the Court. *See Wilson v. Slatalla*, 970 F. Supp. 405 (E.D. Pa. 1997); *Maier v. Maretti*, 671 A.2d 701 (Pa. Super. Ct. 1995).

Mavrinac fails to identify any statement the Defendants published to a third party; *a fortiori*, she has not identified any statement that a third party would understand to be defamatory. Nor has Mavrinac identified to whom the allegedly defamatory comments were publicized, when they occurred, or the context in which they were made. And none of the statements listed in the complaint could be deemed defamatory. Accordingly, Defendants' motion to dismiss Plaintiff's defamation claim will be granted. If Plaintiff believes she can set forth a cognizable defamation claim under Pennsylvania law, she may seek leave to amend the complaint within twenty (20) days of this decision.

### E. Equal Pay Act Claim

In Count V of her complaint, Mavrinac alleges that Defendants violated the Equal Pay Act (EPA) when they failed to compensate her equitably because of her gender.

As an initial matter, Defendant MacLeod has moved to dismiss this claim against him individually because he was not Mavrinac's "employer" and is therefore not subject to suit under the EPA. *See* 29 U.S.C. §630(b).[2] The court agrees. Typically, an employee may bring an

---

[2] The term "employer" means "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year: *Provided*, That prior to June 30, 1968, employers having fewer than fifty employees shall not be considered employers. The term also means (1) any agent of such a person, and (2) a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State, and any interstate agency, but such term does not include the United States, or a corporation wholly owned by the Government of the United States." 29 U.S.C. §630(b).

action for back pay under the EPA only against his or her employer.  *See, e.g.*, *Denicola v. G. C. Murphy Co.*, 562 F.2d 889, 893-895 (3d Cir. 1977).  Although Plaintiff is correct that the statutory definition of employer includes agents, she does not contend that MacLeod engaged in activities outside of the scope of his employment which would render him individually liable. To the contrary, to assert liability against EMAP and the other Defendants, Mavrinac alleges that MacLeod acted in a discriminatory manner in his role as her supervisor and employee of those Defendants.  Mavrinac has not alleged that the corporate entities are not culpable or that the culpable party can only be reached through piercing the corporate veil or dismantling the corporate structure.  *See Lazarz v. Brush Wellman, Inc.*, 857 F. Supp. 417, 422 (E.D. Pa. 1994). Accordingly, the Court will grant Defendant MacLeod's motion to dismiss the EPA claim against him individually.

Second, EMAP argues that Mavrinac fails to state a claim under the EPA because the Act does not prohibit "inequitable" compensation but is instead limited to gender discrimination in compensation for performing equal work.  The EPA makes it unlawful for an employer to pay an employee of one sex less than another employee of the opposite sex, "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."  29 U.S.C. §206(d)(1).  Mavrinac alleges that she is employed in the same capacity as male physicians who are receiving a yearly bonus and participate in the RVU program that is unavailable to her.  Although Defendants argue that Mavrinac has not specifically pleaded facts that prove her claim, her allegations are sufficient to place them on notice of her EPA claim under the liberal pleading requirements of the Federal Rules of Civil Procedure.  *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511-515 (2002). Mavrinac has alleged that she was performing the same work as other emergency physicians, she

was denied participation in the RVU program, and was denied a yearly bonus given to male physicians who were board certified.  In considering a Rule 12(b)(6) motion to dismiss, the Court is not to determine whether the plaintiff will ultimately win at trial but rather whether she has stated a claim that would provide relief if all of the alleged facts are true.  For these reasons, EMAP's motion to dismiss and motion for a more definite statement will be denied.

### F.   Pennsylvania Wage Payment and Collection Law Claims

Mavrinac contends that EMAP, Mercy, and PMHS are in violation of the Pennsylvania Wage Payment and Collection Law (WPCL) pursuant to her employment contract. Consequently, she seeks recovery of all wages and benefits due along with reasonable attorney's fees and costs.  Furthermore, Mavrinac avers that the conduct of the corporate Defendants establishes the absence of a good faith contest or dispute, which entitles her to liquidated damages under the WPCL.

Defendants argue that the WPCL only applies when the employer breaches a contractual obligation to pay earned wages and Mavrinac's claim fails because she has failed to plead the existence or breach of a contract.  EMAP argues that Mavrinac's complaint also fails to specify any damages incurred from the alleged breach.

The purpose of the Pennsylvania Wage Payment and Collection Law is to allow employees to recover wages and other benefits that have already been earned and are due from employers pursuant to existing agreements between the parties. The WPCL does not create a right to recovery, but instead provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages. *Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir.

14

1990).  Accordingly, for Mavrinac to recover under the WPCL, one or more of the Defendants must breach a contract.

To plead breach of contract, a plaintiff must assert the existence of a valid and binding contract; that the plaintiff has complied with contract by performing her own obligations under it; all conditions precedent were fulfilled; there was a breach of the contract; and damages were incurred.  *Pierce v. Montgomery County Opportunity Bd.,* 884 F. Supp. 965, 970 (E.D. Pa. 1995).  Federal Rule of Civil Procedure 8(a) permits a plaintiff to assert the existence of an express, written contract either by setting it forth verbatim in the complaint, attaching a copy as an exhibit, or to plead it according to its legal effect.  *Id.* at 970 (*citing* 5 Charles A. Wright, Arthur R. Miller, *Federal Practice and Procedure*, §1235 at 272-73 (1990)).

In her complaint, Mavrinac alleges the existence of a contract, the breach of contract and damages in the form of lost wages.  Nevertheless, she has set forth neither the terms of the contract nor has she attached the contract to her complaint.  Mavrinac also fails to aver that Defendants have failed to pay back wages already earned.  Accordingly, the Court will grant Defendants' motion to dismiss Plaintiff's claims under the Pennsylvania Wage Payment and Collection Law.  If Plaintiff can set forth a cognizable WPCL claim, she may seek leave to amend her complaint within twenty (20) days of this decision.

### G.  Defendant MacLeod's Motion to Dismiss Plaintiff's PHRA Claim

Defendant MacLeod argues that because he was not charged specifically as a respondent in Plaintiff's complaint to the EEOC, liability cannot attach to him when the complaint is subsequently cross-filed with the PHRC.  MacLeod also argues that individual liability under the Pennsylvania Human Relations Act (PHRA) attaches only if the individual aids and abets the

15

doing of any act declared to be an unlawful discriminatory practice.  *See* 43 Pa. C.S.A. §955(e).

MacLeod reasons that because Mavrinac's EEOC charge has made no reference to the aiding

and abetting provision of the PHRA, the only charge asserted in the cross-filed complaint under

the PHRA is that against the corporate Defendants.

Mavrinac argues that naming MacLeod in the body of an EEOC complaint was

sufficient, upon cross filing, to exhaust the administrative remedy of filing a complaint with the

PHRC.  The Court agrees.  In *Kinnaly v. Bell of Pennsylvania*, the district court held that

specifically describing an individual within the body of an administrative charge is enough to put

that individual on notice of the charge:

> In pleading before the PHRC/EEOC, plaintiff may not have foreseen the necessity
> or desirability of formally listing individual respondents. Yet, in describing the
> conduct of these individuals in the factual statement accompanying her complaint,
> she satisfied the basic procedural requirement of her PHRC/EEOC pleadings.
> The purpose of filing before the PHRC/EEOC is to alert concerned parties of the
> opportunity for voluntary conciliation without the animosity, expense, and
> publicity of litigation. Although the individual defendants' names were not
> included where they should have been, these individuals received every indication
> that their conduct was being formally reviewed by the PHRC.

*Kinnally v. Bell of Pennsylvania,* 748 F. Supp. 1136, 1140 (E.D. Pa.1990) (citations omitted).

Although Mavrinac did not list MacLeod as a Defendant on her EEOC charge, she

alleged that he acted in a discriminatory manner toward her and that as her supervisor, MacLeod

denied her request for a raise and withheld information regarding the yearly bonus pay.  The

frequency and the seriousness of the allegations made by Mavrinac in her EEOC complaint put

MacLeod on notice that his actions were under review by the PHRC when the complaint was

cross-filed.

16

Individual liability exists under the PHRA for, "any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice . . . ." 43 Pa. C.S.A. §955(e). *See also, Dici v. Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996). Defendant MacLeod qualifies as a "person" or "employee" under the statute. Therefore, his motion to dismiss with regard to individual liability under the PHRA will be denied.

### H.  Emotional Distress Allegations

Defendants argue that Mavrinac's allegations regarding damages in her "[w]herefore" clause for intentional or negligent  infliction of emotional distress are barred by the exclusivity provision of the Pennsylvania Workers Compensation Act (PWCA).  Defendants are correct that the Court of Appeals for the Third Circuit has held that the PWCA "provides the sole remedy for injuries allegedly sustained during the course of employment," and thus, functions as a complete bar to state law tort claims in the employment context. *See Matzak v. Frankford Candy & Chocolate Co.*, 136 F.3d 933, 940 (3d Cir. 1997) (PWCA bars claims for intentional and/or negligent infliction of emotional distress arising out of an employment relationship)(citations and internal quotations omitted).  To the extent Mavrinac is attempting to assert separate causes of action for negligent or intentional infliction of emotional distress under Pennsylvania law through the "[w]herefore" clauses in her Complaint, these claims must therefore be dismissed.

However, even assuming intentional or negligent infliction of emotional distress claims are barred by the PWCA's exclusive remedy provision, the Court of Appeals for the Third Circuit has more recently held that emotional distress damages are otherwise recoverable as

compensatory damages on a successful Title VII claim. *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 161 (3d Cir. 1999). Title 42, §1981a(b)(3) authorizes compensatory damages under Title VII for "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." *See Durham*, 166 F.3d at 161. Accordingly, at this stage, Defendants' motion to dismiss to exclude emotional distress damages as part of Plaintiff's remedies must be denied.

### I.  Punitive Damages

Punitive damages are not recoverable as a matter of law under the PHRA. *Hoy v. Angelone*, 720 A.2d 745 (Pa. 1998). Nevertheless, Mavrinac may pursue 'punitive' damages as part of her Title VII and ADEA[3] claims to the extent they are permitted by law. Defendants may renew their challenge to these claims at the summary judgment stage, if appropriate.

---

[3]  *See Kelly v. Matlack, Inc.*, 903 F.2d 978 (3d Cir. 1990). The ADEA incorporates the enforcement powers, remedies, and procedures of the Fair Labor Standards Act ("FLSA") set forth in 29 U.S.C. §§211(b), 216 (except for subsection (a)), and 217. *See* 29 U.S.C. §626(b); *Potence v. Hazleton Area School Dist.*, 357 F.3d 366, 372 (3d Cir. 2004). The enforcement provision of the FLSA expressly provides for imposition of liquidated damages payable "in cases of willful violations of this chapter." 29 U.S.C.   §626(b). The FLSA further provides that "[a]ny employer who violates [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. §216(b). "Thus, when a jury finds that an employer willfully violated the ADEA, the basic damages award may be doubled under this liquidated damages provision." *Potence*, 357 F.3d at 372.

**III. Conclusion**

For the foregoing reasons, the Court will grant in part and deny in part the Defendants'

motions to dismiss.  An appropriate order follows.


BY THE COURT:


  s/ Thomas M. Hardiman

Thomas M. Hardiman
United States District Judge


cc: counsel of record

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOAN M. MAVRINAC, M.D., M.P.H., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-1880 |
| | ) | |
| EMERGENCY MEDICINE ASSOCIATION | ) | Judge Thomas M. Hardiman |
| OF PITTSBURGH (EMAP), MERCY | ) | |
| HOSPITAL OF PITTSBURGH, | ) | |
| PITTSBURGH MERCY HEALTH | ) | |
| SYSTEMS, and BRUCE A. MACLEOD, | ) | |
| M.D., FACEP, INDIVIDUALLY and IN HIS | ) | |
| OFFICIAL CAPACITY, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

AND NOW, this 21st day of September, 2005, for the reasons set forth in the foregoing

Opinion, it is hereby ORDERED that Defendants' Motions to Dismiss Complaint and Motion for

More Definite Statement (Doc. Nos. 7, 9) are GRANTED IN PART AND DENIED IN PART.

The portions of Plaintiff's discrimination claims concerning her 1997 non-promotion and

her claims of "general discrimination" are dismissed with prejudice. Plaintiff's Equal Pay Act

claim against Defendant MacLeod is dismissed with prejudice. Any causes of action or claims

for intentional or negligent infliction of emotional distress are barred by the exclusivity

provision of the Pennsylvania Workers' Compensation Act. However, emotional distress

damages may be pursued under Title VII. Plaintiff's punitive damage claim under the

Pennsylvania Human Relations Act is dismissed. Plaintiff's claims under the Pennsylvania

Wage Payment and Collection Law are dismissed with Plaintiff granted twenty (20) days from

the date of this Order to seek leave to amend. Plaintiff's common law claim for defamation is

dismissed with Plaintiff granted twenty (20) days from the date of this Order to seek leave to amend.

The remainder of Defendants' motions to dismiss and motion for more definite statement are denied.

BY THE COURT:


    s/ Thomas M. Hardiman
Thomas M. Hardiman
United States District Judge


cc: counsel of record

Vicki Kuftic Horne, Esq.
1450 Two Chatham Center
Pittsburgh, PA 15219 - 3427

Laura A. Candris, Esq.
Elaina Smiley, Esq.
Meyer, Unkovic & Scott LLP
1300 Oliver Building
Pittsburgh, PA 15222

A. Patricia Diulus-Meyers, Esq.
Marijane E. Treacy, Esq.
Jackson Lewis, LLP
One PPG Place - 28th Floor
Pittsburgh, PA 15222