IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOAN M. MAVRINAC, M.D., M.PH.,   )
                                     )
        Plaintiff,            )
                                     )
     v.                    )      Civil Action No. 04-1880
                                   )      Judge Nora Barry Fischer
                                   )
EMERGENCY MEDICINE         )
ASSOCIATION OF PITTSBURGH    )
(EMAP), MERCY HOSPITAL OF      )
PITTSBURGH, PITTSBURGH MERCY  )
HEALTH SYSTEM, and BRUCE A.    )
MACLEOD, M.D., FACEP,         )
INDIVIDUALLY and IN HIS OFFICIAL )
CAPACITY,                    )
                                   )
        Defendants.      )

## MEMORANDUM OPINION

This Memorandum Opinion and Order addresses two pending motions in limine filed by Mercy Hospital of Pittsburgh and Pittsburgh Mercy Health System (collectively, "Defendants"): (1) Defendants' Second Motion in Limine to Exclude Evidence Regarding Plaintiff's Untimely Claims [DE 122] and (2) Defendants' Seventh Motion in Limine to Exclude Evidence Beyond the Scope and Pertinent Time Period of Plaintiff's Claims and Memorandum of Law in Support [DE 128].

Upon consideration of the above Motions and Plaintiff's Memorandum of Law Addressing Timeliness of Claims (Docket No. 152), Defendants' Brief in response thereto (Docket No. 169), Defendants' Memorandum of Law Regarding the Untimeliness of Claims (Docket No. 154),

1

Defendants' Letter Brief (Docket No. 206), Plaintiff's Letter Brief (Docket No. 208), Plaintiff's Memorandum of Law Addressing *Ruehl v. Viacom, Inc.* and Timeliness (Docket No. 212), Defendants' Memorandum of Law Regarding the Applicability of the Third Circuit's *Ruehl v. Viacom, Inc.* (Docket No. 213), oral argument before this Court, and for the reasons set forth below, Defendants' Second and Seventh Motions in Limine are DENIED.

This Court finds that the relief Defendants seek, specifically the dismissal of some of Plaintiff's claims due to untimeliness, could have been sought much earlier in this litigation at the summary judgment stage. Per this Court's order, summary judgment motions were due on September 22, 2006. Although the Mercy Defendants filed a motion for summary judgment, their challenge of the timeliness of Plaintiff's claims was not advanced. Instead, the Mercy Defendants chose to burden the Court with twenty-two motions in limine, two of which (the instant motions) address the alleged lack of timeliness of the claims asserted by Joan Mavrinac.

A motion in limine is a pretrial motion requesting the court to address evidence that is highly prejudicial. *Blacks Law Dictionary* 1013 (6th ed. 1990). The purpose of such motion is to avoid injection into the trial of matters which are irrelevant, inadmissible, and prejudicial. *Id*. As a general rule, if the moving party is seeking a ruling that goes beyond an evidentiary determination, there is a strong likelihood that the motion in limine deals with an inappropriate matter. 21 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure §5037.18 (2d ed. 2005). Motions in limine are inappropriate vehicles to seek a final determination with respect to a substantive cause of action, and should not be used as a substitute for a motion for summary judgment. *Id.* Accordingly, Defendants should have raised the issues under consideration in a motion for summary judgment, rather than at the pretrial conference or by way of the present motions. However, in

order to ensure a just and expeditious determination in this action, this Court will consider and rule on the Defendants' motions at this time.

## I. Defendants' Motions in Limine

### A. Second Motion in Limine

Defendants assert that Plaintiff's claims under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), the Pennsylvania Human Relations Act ("PHRA"), and the Equal Pay Act of 1963 ("EPA") as to her denial of salary increase and promotion in 1997, and denial of participation in EMAP'S RVU program in 2002, are untimely and should be dismissed. Defendants also argue that Plaintiff's PHRA claim for denial of a 2003 salary increase should be dismissed as time-barred. Further, Defendants object to the admission of evidence concerning any of the alleged time-barred claims.

### B. Seventh Motion in Limine

Defendants also object to and seek to exclude the admission of any evidence beyond the scope and pertinent time period of Plaintiff's claims on the grounds that such evidence is not relevant and would cause unfair prejudice, confusion of the issues, mislead the jury, and would waste the Court's time. Given that the relief sought is the same as that sought in Defendants' Second Motion in Limine, the Court will address these motions together.

## II. Dismissal of Untimely Claims

### A. Standard for the Application of the Statute of Limitations

Under both Title VII and the ADEA, a plaintiff must file a complaint with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged discrimination or within 300 days of the alleged discrimination if the person has initially instituted proceedings

3

with a state or local agency with authority to grant or seek relief from such practice.  42 U.S.C. §

2000e-5(e),  29 U.S.C. § 626 (d)(2).   Accordingly, when required, a Plaintiff can file with the

EEOC within 300 days of the alleged discrimination.  *Cogan v. Fischer Scientific Co.*, 935 F.2d

1407 (3d Cir. 1991) (a plaintiff in a deferral state, such as Pennsylvania, is entitled to an

extended period of 300 days). In order to bring a suit under the PHRA, a plaintiff must file a

complaint with the PHRC within 180 days after the alleged act of discrimination.  43 P.S. §

959(h).   Under the EPA, claims must be filed within a 2 or 3 year limitations period after the

cause of action accrued.  29 U.S.C. § 255.

In order to assess the timeliness of Mavrinac's disputed discrimination claims, the

following facts are necessary.  Mavrinac filed a complaint with the EEOC and cross filed her

complaint with the PHRC on May 3, 2004.  Mavrinac then filed the instant civil complaint on

December 15, 2004.  (Docket No. 1).  Mavrinac filed her amended complaint on October 6,

2005.  (Docket No. 21).  Thus, on its face,  asserted claims arising before July 6, 2003, 300 days

prior to the date of the instant complaint, may be time-barred under Title VII and the ADEA, and

all claims before November 5, 2003 may be time barred under the PHRA. Under the EPA, since

Plaintiff filed her complaint on December 15, 2004,  the applicable two year statute of limitations

for timely claims would commence on December 15, 2002. If a willful violation is found, a three

year limitation period applies, and any claims prior to December 15, 2001 would be time-barred.

Here, Plaintiff asserts various claims of discrimination based upon Title VII, the ADEA,

the PHRA, and the EPA.  Specifically, Plaintiff alleges that, in addition to the termination of her

full time employment status on February 28, 2004, she suffered the following discriminatory

acts:

4

- Denial, in 1997, of Plaintiff's request for promotion to the positions of Interim Chief and Chief Physician of the Division of Pediatric Emergency Medicine at Mercy (Docket No. 21, at ¶ 68);

- Denial, in 1997, and thereafter, of a salary increase of $5000 for obtaining board certification in emergency medicine (Docket No. 21, at ¶ 73);

- Exclusion from participation in EMAP's RVU program beginning in 2002 (Docket No 21, at ¶ 75-78); and

- Denial of Plaintiff's request for a salary increase in July 2003 (Docket No. 21, at ¶ 80).

The parties agree that Plaintiff's claim of discrimination for denial of a promotion in 1997 is time barred under all relevant statutes. The Defendants do not dispute the timeliness of Plaintiff's discrimination claim in regards to her termination on February 28, 2004.

Defendants do dispute that Plaintiff's Title VII, ADEA, PHRA, and EPA claims for her denial of salary increase in 1997 and denial of participation in EMAP'S RVU compensation system are timely; hence, Defendants argue that these claims should be dismissed. Further, Defendants argue that Plaintiff's PHRA claim for denial of a 2003 salary increase should be dismissed as time-barred. Defendants also argue that to admit any evidence or argument based on these alleged actions, even as background evidence of alleged discrimination, would be prejudicial. The Court will address each of these arguments below.

### B. Denial of Salary Increase in 1997 and thereafter

Plaintiff argues that her claim based upon the denial of the $5,000 salary increase is not time-barred even though it appears to be the type of discrete discrimination claim addressed by

the Supreme Court's recent holding in *Ledbetter v. Goodyear*, 127 S.Ct. 2162 (2007).[1]  Plaintiff

asserts there are two considerations that distinguish her claim from *Ledbetter*: (1) Plaintiff is

entitled to equitable tolling because Defendants misrepresented her eligibility to receive a salary

increase for additional emergency medicine certification and failed to disclose that the policy was

not uniformly applied; and (2) the application of the salary increase pay structure was

discriminatory as set forth in *Bazemore v. Friday*, 478 U.S. 385 (1986).   (Docket No.152, at

p.12).

　　　　Defendants argue that the decision to deny Plaintiff a $5,000 increase in salary occurred

in 1997 and was a discrete pay setting act of alleged discrimination occurring at a particular point

in time, and therefore, all claims based upon this decision are time-barred, consistent with the

United States Supreme Court's analysis in *Ledbetter*.  (Docket No. 154, at p. 4).  Moreover,

Defendants argue that Plaintiff's claim cannot be rehabilitated by either the discovery rule or the

doctrine of equitable tolling.  Defendants assert that since there is no evidence that Defendants

actively misled the Plaintiff, and since there is no uncertainty that Plaintiff was aware in 1997

that she was denied a salary increase because she did not have ABEM certification, her denial, as

a discrete act, triggered the running of the statute of limitations.  (Docket No. 206,  at p. 4).

### 1. Misrepresentation

　　　　Considering Plaintiff's allegations in light of the Supreme Court's decision in *Ledbetter*,

this Court finds that there are two different scenarios that need to be addressed surrounding

---

[1]On July 31, 2007, the House of Representatives passed a bill known as the Lilly Ledbetter Fair Pay Act which, if it becomes law, would overturn the Supreme Court's decision in  *Ledbetter*.  The law would allow employees to recover lost pay if a claim is filed within 180 days of a discriminatory paycheck no matter when the discriminatory compensation decision was made.   Goldner, Shelley R.,  *Later Effects of Past Discrimination Do Not Restart Clock for Filing EEOC Charge: Ledbetter v. Goodyear Tire and Rubber Co.* (Voices &Views: A Newsletter from the PBA Commission on Women in the Profession, Summer 2007, at 6).

Plaintiff's denial of salary increase in 1997: (1) whether Defendants misrepresented Plaintiff's eligibility for a salary increase based on board certification and (2) whether Defendants uniformly applied the policy on board certification in regard to salary increases.

The first scenario revolves around whether Plaintiff was aware in 1997 that she had not obtained the alleged requisite certification for the salary increase and therefore was not qualified to receive the increase or whether the Defendants misrepresented her eligibility.  Dr. Mavrinac has testified that she first became aware of the salary increase for board certification at a wedding in October 1997 through Nancy Blies, a nurse practioneer, while she was telling people she had just obtained her certification from the American Association of Physician Specialists ("AAPS"). (Mavrinac Dep.  97: 10-20, Aug. 1, 2006).  After learning of the potential for a $5,000 increase based on board certification, Plaintiff explained that she set up a meeting with Dr. Macleod, showed him her board certification,  reminded him that he had supported her in sitting for the board, while also requesting the $5,000 a year increase for her board certification.  (Mavrinac Dep. 97: 21-25, 98:1-14).  During this meeting, as well as during the subsequent Management Advisement Counsel ("MAC") Meeting , Dr. MacLeod informed Plaintiff that her recent certification was not good enough in that it was not the required ABEM certification for the salary increase.  (Mavrinac Dep.  98-102: 1-25).  According to Plaintiff's deposition and the MAC minutes dated November 18, 1997 and December 2, 1997, Plaintiff's salary request for an adjustment was discussed at both MAC meetings, at which the Plaintiff was present.  (Mavrinac Dep. 102-103: 1-25;  Mavrinac Dep. Exh. No. 10.)  In these meetings it was noted that further research showed that the Pennsylvania Trauma Systems Foundation did not recognize the AAPS certification that Plaintiff received.  (Mavrinac Dep. 102-103: 1-25, 104: 1-10).

7

In addition to the above testimony of Plaintiff, she advances the argument that the Fringe Benefit Policy in effect during 1997, provided for an automatic salary increase upon receiving "board certification."[2]  The term "board certification"  is broad and does not specifically delineate the alleged ABEM certification requirement.  (Docket No. 152, at 13).  Of note, this document was not amended until May 2004, after Plaintiff's termination, to add the specific qualification of ABEM certification.  (MacLeod Dep. 146: 1-25, 147: 1-23, June, 1, 2006; MacLeod Dep. Exh. Nos. 17 & 18).  Moreover, according to the record, the first mention of the requirement for ABEM certification to obtain a salary increase was not documented until November 16-17, 2003 in the EMAP Fall Retreat Minutes.  (Konop Dep. 109: 4-23, July 11, 2006; Konop Dep. Exh. No. 5).

A misrepresentation encompasses any manifestation by words or conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts, including a statement that is meant to deceive or mislead, therefore creating false representations. *Blacks Law Dictionary* 1001 (6th ed. 1990).  Under Pennsylvania law, a determination of whether allegedly false statements were honestly made with the intention in fact to perform in the future entails questions of fact.  *Rosen v. Communication Services Group*, Inc., 155 F. Supp. 2d 310, 321 (2001).  Factual determinations are the sole province of the jury.  *Rohm and Haas Co. v. Continental Cas. Co.*, 566 Pa. 464, 478 (2001).  Furthermore, credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury

---

[2] In determining the intent of the parties, ambiguities are to be construed against the contract drafter. *Hartman v. Baker*, 766 A.2d 347 (Pa. Super. Ct. 2000).  This document (Defendants Trial Exh. No. 14, "Emergency Medicine Association of Pittsburgh Fringe Benefits Package Physician.") was written by EMAP/ or Mercy Defendants, hence, it's construed against them.

functions, not those of a judge.  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

Admittedly, from Plaintiff's deposition testimony as well as Dr. MacLeod's, a jury could find that Plaintiff was informed by Defendants as early as 1997, after her denial of the requested salary increase, of the requisite ABEM certification, and therefore, was aware she was not qualified to receive the increase.  However, in order to make this finding, the jury must weigh the credibility of Dr. MacLeod's testimony against that of Dr. Mavrinac.  When Dr. MacLeod's statements in 1997 are compared to the broad Fringe Benefit Policy that was in effect at the time, whether or not Dr. MacLeod accurately presented the salary increase requirements becomes a fact intensive inquiry where credibility is at issue.

### 2.  Whether the Salary Increase Policy was Uniformly Applied

Dr. Mavrinac also asserts that her denial of salary increase claim based on board certification is timely because she is entitled to equitable tolling since Defendants misrepresented her eligibility to receive a salary increase, given her additional emergency medicine certification, and failed to disclose that the salary increase policy was not uniformly applied.  (Docket No. 152, at 12).  Plaintiff asserts that she was unaware that Defendants were applying the salary increase policy in a discriminatory manner, in that the policy was not limited to only ABEM certified physicians,  until some time during the discovery process in this case.  (Docket No. 152, at 13).

Defendants argue that the decision to deny Plaintiff a $5,000 increase in salary occurred in 1997 and was a discrete pay-setting act of alleged discrimination occurring at a particular point in time, therefore, all claims based upon this decision are time-barred, consistent with the United States Supreme Court's analysis in *Ledbetter.*  (Docket No. 154, at p. 4).  Moreover, Defendants

argue that Plaintiff's claim cannot be rehabilitated by either the discovery rule or the doctrine of equitable tolling.  Defendants assert that since there is no evidence that Defendants actively misled Plaintiff, and since there is no uncertainty that Plaintiff was aware in 1997 that she was denied a salary increase because she did not have ABEM certification, her denial, as a discrete act, triggered the running of the statute of limitations.  (Docket No. 206,  at p. 4).

The *Ledbetter* court did not directly address whether or not a plaintiff's untimely Title VII claim could be salvaged by the application of the doctrine of equitable tolling or the discovery rule as the Plaintiff in *Ledbetter* did not raise these issues.  *Ledbetter*, 127 S.Ct. at 2177.  ("We have previously declined to address whether Title VII suits are amenable to a discovery rule.") However, the Third Circuit has discussed the application of the doctrine of equitable tolling and the discovery rule in *Oshiver v. Levin*, 38 F.3d 1380 (3d Cir.1994).

In *Oshiver*, the Third Circuit adopted the Seventh Circuit's application of the discovery rule in an age discrimination claim agreeing that the discovery rule is implicit in *Delaware State College v. Ricks*, 449 U.S. 250 (1980).  The discovery rule delays the initial running of the statutory limitations period, but only until the plaintiff has discovered, or by exercising reasonable diligence, should have discovered (1) that he or she has been injured, and (2) that this injury has been caused by another party's conduct.  *Oshiver,* 38 F.3d  at 1386. The discovery rule, although it often applies to situations involving bodily injury, may also apply in cases involving alleged employment discrimination.  *Id.*  "The polestar of the discovery rule is not the plaintiff's actual knowledge of injury, but rather whether the knowledge was known, or through the exercise of reasonable diligence, knowable to the plaintiff."  *Id.*

Equitable tolling stops the statute of limitations from running when the claim's accrual

date has already passed. *Oshiver*, 38 F.3d 1387.  There are two requirements for equitable tolling

to be applied in employment discrimination cases:

> the equitable tolling doctrine may excuse the plaintiff's non-compliance with
> the statutory limitations provision at issue when it appears that (1) the
> defendant actively misled the plaintiff respecting the reason for the plaintiff's
> discharge, and (2) this deception caused the Plaintiff's non-compliance with
> the limitations provision.

 *Oshiver,* 38 F.3d at 1387 citing *Meyer v. Riegel*, 720 F.2d 303 (3d Cir. 1983).  A failure to

disclose may create and satisfy the first prong of equitable tolling, dealing with misleading

conduct,  in that "cases may arise where the employer's own acts or omissions have lulled the

plaintiff into foregoing prompt attempts to vindicate his rights."  *Meyer*, 720 F.2d at 307.

Material omissions are relevant in determining the existence of material issues of fact regarding

whether Defendants actively misled Plaintiff concerning her cause of action.  *In re Mushroom

Transp. Co.*, 382 F.3d 523, 339 (3d Cir. 2004).  Furthermore, "like the discovery rule, equitable

tolling requires the plaintiff to demonstrate that he or she could not, by the exercise of reasonable

diligence, have discovered the essential information bearing on his or her claim."  *In re

Mushroom Transp. Co.*, 382 F.3d 523, 339 (3d Cir. 2004).  "In assessing the finding that [the

plaintiff] failed as a matter of law to exercise reasonable diligence for purposes of the discovery

rule and equitable tolling, we are guided by the general rule that such determinations are typically

within the jury's province unless the facts are so clear that reasonable minds could not differ."

*Id*.

Plaintiff argues that it was not until these proceedings commenced that Plaintiff

discovered, through reasonable diligence, the uneven application of the salary increase policy,

based on board certification.   First, Plaintiff obtained a copy of the Fringe Benefit Policy that was in effect at the time she was denied her salary increase for lack of board certification. (Docket No. 152, at 13).  After reading the policy, Plaintiff discovered that the benefit statement broadly provided for an automatic salary increase upon receiving "board certification" and did not further delineate the certification required as ABEM certification.  (Docket No. 152 at p. 13).

Second, in discovery, Defendants produced the contract of Dr. Golestan[3] from 2001 which exhibited the same broad language as in the Fringe Benefit Policy, such that "in the event employee becomes board certified by the American Board of Pediatrics during their employment, employer will increase employee's salary by $5,000 per annum beginning with the month following board certification."  (Docket No 152, at 13; Plaintiff's exhibit P-71I, at p. 11).  Dr. MacLeod and Amy Konop testified in their depositions, when questioned about Dr. Golestan's employment contract, that Plaintiff had the certification (i.e. pediatric) listed in Dr. Golestan's contract but was not paid the $5,000 increase in salary.  (MacLeod Dep. 33:9-23; Konop Dep. 113: 4-15).  Plaintiff asserts that payroll records reflect that Dr. Golestan at all times had a higher base salary than Dr. Mavrinac, and that even though Dr. Golestan denies he subsequently received an increase in salary due to his certification, a jury may find it was built into his pay. (Document 152, at p. 13).

Third, Plaintiff asserts that EMAP clarified to third parties that a certification other than ABEM granted increased compensation.  Practice Manager Amy Konop, told Dr. Bradford in April 1999 that should Dr. Aqueel Khan[4] become an employee of EMAP, he must be offered all

---

[3] Dr. Golestan is a male physician.

[4] Dr. Aqueel Khan is a male physician.

the same benefits provided to other EMAP physicians, including an automatic salary increase of $5,000 when proof of board certification is obtained. (Konop Dep. 313 :1-25; Konop Dep. Exh. 44).  Ms. Konop acknowledged that Dr. Kahn could neither obtain ABEM certification nor was he eligible.  (Konop Dep., 314: 1-6).  Plaintiff alleges that since the $5,000 increase was promised to both Dr. Khan, who could not obtain certification, and paid to Dr. Golestan for a different certification other than ABEM, the policy was applied in a discriminatory manner. (Docket No. 152, at p. 14).

Once again, considering the Defendants' and Plaintiff's contrasting view of the record pertaining to whether the salary increase policy was uniformly applied or applied in a discriminatory fashion, this Court cannot make a determination without hearing all of the pertinent testimony and reviewing all of the pertinent documentary evidence. At trial, whether a jury determines that Defendants engaged in misrepresentation will determine whether the doctrine of equitable tolling is available to Plaintiff to make her claim timely.  Furthermore, even if it is determined that Defendants did not engage in misrepresentation, the discovery rule may be applicable since Plaintiff is alleging she did not discover and did not have the means to discover the evidence surrounding the basis for this claim until discovery ensued in this case.[5]   As stated above, intensive factual inquiries such as these are for the jury.

### 3. Application of *Bazemore* to Plaintiff's Claim

Plaintiff's argument as to the timeliness of her claim based on the $5,000 salary increase is akin to the arguments raised in *Bazemore v. Friday*, 478 U.S. 385 (1986),  rather than

---

[5]Plaintiff testified that she would not have been aware of whether EMAP had ever given the $5,000 increase to any person who received a certification other than ABEM because salary information was not discussed with others.  (Mavrinac Dep. 105: 8-13).

*Ledbetter*.  Defendants disagree with Plaintiff's argument, and assert that *Ledbetter* not only

applies, but bars this claim as untimely.

The time for filing a charge of employment discrimination with the Equal Opportunity

Commission ("EEOC") begins when the discriminatory act occurs.  A discriminatory act

includes "any discrete act of discrimination in termination, failure to promote, denial of transfer,

and refusal to hire."  *National R.R. Passenger Corp v. Morgan*, 536 U.S. 101, 114 (2002).  In

determining the accrual date for statute of limitations purposes, the Supreme Court emphasized

the importance of focusing on the specific employment practice or act that is at issue. *National*

*R.R. Passenger Corp.*,  536 U.S. 101, 110-111 (2002).   "Because a pay-setting decision is a

discrete act, it follows that the period for filing an EEOC charge begins when the act occurs."

*Ledbetter*, 127 S.Ct. 2165.  The employment practice or action is "a discrete act or single

'occurrence'" that takes place at a particular point in time. *Id*.  The charging period or accrual

period for that discrete act or occurrence does not always begin when the act or occurrence takes

place, but when the action is actually communicated to the Plaintiff.  *Delaware State College v.*

*Ricks*, 449 U.S. 249, 258-259 (1980).

Additionally, each new intentionally discriminatory act or occurrence begins a new

charging period.  *Morgan*, 536 U.S. at 113.  In *Ledbetter*, however, the Supreme Court

emphasized that "[a] new violation does not occur,  and a new charging period does not

commence, upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects

resulting from the past discrimination." *Ledbetter*, 127 S.Ct. at 2169.  The Supreme Court's

decision in *Ledbetter*, however, while discussing *Bazemore,* held that each paycheck only

constitutes a new act of discrimination where an employer adopts and retains a facially

14

discriminatory pay structure. *Ledbetter*, 127 S.Ct. at 2173. Accordingly, in *Ledbetter*, the Supreme Court held that an employer who maintains such a discriminatory pay structure can be regarded as intending to discriminate with each paycheck as long as the structure is used. *Id.* However, where the pay structure is not facially non-discriminatory and is neutrally applied, no new violation occurs, nor does a new charging period begin when the employer issues a paycheck. *Id.* In *Ledbetter*, the Court distinguished *Bazemore* because the Plaintiff in *Ledbetter* had not adduced evidence that Goodyear initially adopted its performance-based pay system in order to discriminate on the basis of sex or that it later applied this system to her within the charging period with any discriminatory animus. *Id.* at 2174.

Plaintiff asserts Defendants applied the salary increase policy in a discriminatory fashion as to Dr. Golestan in 2001 when they did not offer the same increase to Dr. Mavrinac. At that time, Defendants' discriminatory animus was evidenced. (Docket No. 152, at p. 15). Plaintiff further argues that Defendants engaged in a fresh discriminatory act each time they promised or paid the salary increase to a male physician who was not ABEM certified but then did not give the increase to Plaintiff. (Docket No. 152, at p. 16). Further, Plaintiff argues discovery of this activity was delayed by Defendants' active misrepresentation and then subsequent failure to disclose the different treatment to Plaintiff. (Docket No. 152, at p. 16).

This Court finds convincing Plaintiff's argument that *Bazemore* is more applicable to this case than *Ledbetter*, assuming that Plaintiff can prove the facts stated above as well as the facts necessary to apply the doctrine of equitable tolling or the discovery rule to make her claim timely. If the doctrine of equitable tolling or the discovery rule is applied to her claim, the alleged acts in denying her a pay raise could well be within the charging period, and, hence, not

15

time-barred.

Accordingly, this Court DENIES Defendants' Second Motion in Limine to the extent it seeks to dismiss as untimely Plaintiff's Title VII, ADEA, PHRA, and/or EPA claims pertaining to Plaintiff's denial of salary increase for board certification.

### C. Denial of Participation in the RVU Compensation Program

#### 1. Timeliness under the EPA

Claims arising under the EPA must be brought within two years after the cause of action accrues unless the violation is "willful, in which case the statute of limitations is extended to three years." 29 U.S.C. § 255(a). Defendants argue that because Plaintiff does not allege in her Amended Complaint or Pretrial Statement that the Defendants willfully violated the EPA, the three year limitation period does not apply to Plaintiff's allegations. (Docket No. 154, at p. 6).

Pursuant to the Supreme Court's interpretation of Federal Rule of Civil Procedure 8(a)'s simplified notice pleading standard, a complaint need only provide "fair notice of the claims . . . and the ground upon which they rest." *Cunningham v. Freedom Ford Sales, Inc*., No. 2404739, 2007 U.S. Dist. WL 2404739, at *7 (W.D. Pa. Aug.17, 2007) citing *Swierkiewicz* v. *Sorema N.A.*, 534 U.S. 506, 514 (2002). Whether there has been a willful violation of the Fair Labor Standards Act ("FLSA"), from which the EPA is derived, is a question of fact to be determined by the fact finder by examining the evidence at trial. *Id.* The presence of the word "willful" in the complaint is not required by the liberal pleading standards of Rule 8(a). *Id.* Although Plaintiff did not expressly allege willfulness in her Amended Complaint, she satisfied the notice pleading requirements by alleging facts pertaining to her denial in the RVU program which could be construed as willful acts performed by the Defendants.

The RVU program was commenced in January 2002 by EMAP. (Docket No. 50, at ¶70).

Plaintiff filed her civil complaint on December 15, 2004. (Docket No. 1). Consequently, under

the EPA, the applicable two year statute of limitations for timely claims would commence on

December 15, 2002, unless the jury determines that the Defendants willfully violated the EPA. If

a willful violation is found, a three year limitations period applies, and only claims prior to

December 15, 2001 would be time-barred. Whether the claims of discrimination pertaining to the

RVU program are timely under the EPA will be a fact based determination for the jury after

hearing all the evidence. Therefore, if the jury determines the Defendants' actions associated

with the RVU program willfully violated the EPA, the Plaintiff's claim will be deemed timely.

Accordingly, Defendants' Motion in Limine regarding Plaintiff's EPA claim pertaining to

the RVU program is DENIED.

### 2. Timeliness under Title VII, the ADEA, and the PHRA

Defendants allege that Plaintiff's claim that she was discriminated against when she was

excluded from participation in the RVU  program, beginning in 2002, constitutes a discrete pay-

setting act of alleged discrimination occurring at a particular point in time, therefore, all claims

based upon this decision are time-barred, consistent with *Ledbetter.* Furthermore, Defendants

argue that the discovery rule and the doctrine of equitable tolling do not apply or revive

Plaintiff's claim because the discrete act, the initial exclusion of Plaintiff from the RVU program

in 2002, triggered the running of the statute of limitations. Specifically, they argue that the

doctrine of equitable tolling does not apply here because there is substantial evidence, such as the

January 1, 2002 EMAP Physician Compensation Plan, distributed to all EMAP physicians, that

Plaintiff was aware of this discrete pay-setting act in 2002, and therefore she should have filed a

timely complaint in 2002.  Significantly, Defendants allege that the impact of the RVU program was not misrepresented to Plaintiff, but rather Plaintiff "wasn't paying attention."  (Docket No. 206, at p.4-5).

Plaintiff argues that the *Ledbetter* decision supports rather than bars her claim for money damages associated with the implementation of the RVU program in that several events distinguish this claim from the one asserted in *Ledbetter*.  For example, Plaintiff argues that her meeting on July 21, 2003 with Dr. MacLeod, evidenced either or both a discriminatory employment practice and discriminatory intent within the charging period.  In addition, Plaintiff argues that the doctrine of equitable tolling applies to this case as Defendants actively misled Plaintiff through their deceitful acts and omissions,  lulling Plaintiff into inaction.  (Docket No. 208, at  p. 5-6).

As set forth above, the *Ledbetter* Court did not directly address whether or not a plaintiff's untimely Title VII claim could be salvaged by the application of the doctrine of equitable tolling or the discovery rule as the *Ledbetter* plaintiff did not raise the issues.  However, the Third Circuit has discussed the application of the doctrine of equitable tolling and the discovery rule in *Oshiver v. Levin*, 38 F.3d 1380 (3d Cir. 1994).  (*See infra* at pg. 8)  Accordingly, this Court rejects Defendants' argument that *Ledbetter* bars the RVU based claim since the doctrine of equitable tolling may apply.

There are certainly disputed material issues of fact as to whether Plaintiff exercised reasonable diligence to discover her claim and whether the Defendants actively misled her.  For example, Plaintiff asserts that Dr. MacLeod, at a meeting in July 2003, engaged in several acts of deception and omission, including misrepresenting her eligibility to participate in the RVU

18

program and misrepresenting that her salary was fair and just and would not be impacted by

inclusion in the RVU program (Mavrinac Dep. 140: 7-24).  However, Defendants allege that the

RVU program was never misrepresented to Plaintiff by Dr. Macleod, but rather she wasn't

"paying attention," and that Dr. MacLeod relayed to Plaintiff that Plaintiff's salary was fair and

comparable. (Docket No. 206, at p. 5).   Considering the substantial disagreement as to many of

the material facts surrounding the implementation and impact of the RVU program, this Court

finds that they are facts best decided by a jury.

In regard to Plaintiff's claim of discrimination based on her exclusion from the RVU

program, "in assessing the finding that [the plaintiff] failed as a matter of law to exercise

reasonable diligence for purposes of the discovery rule and equitable tolling, we are (once again)

guided by the general rule that such determinations are typically within the jury's province unless

the facts are so clear that reasonable minds could not differ."  *Mushroom*, 382 F.3d at 339.

Furthermore, "credibility determinations, the weighing of evidence, and the drawing of legitimate

inferences from the facts are jury functions, not those of a judge."  *Reeves v. Sanderson*

*Plumbing Products, Inc*., 530 U.S. 133, 150 (2000).

Accordingly, the Court DENIES Defendants' Second Motion in Limine to the extent that

it seeks to dismiss as untimely Plaintiff's Title VII, ADEA, and PHRA claims pertaining to

Plaintiff's exclusion from the RVU  program.

### D. Denial of Salary Increase on July 21, 2003

Defendants argue that Plaintiff's claim of discrimination for denial of a salary increase

under the PHRA is time-barred. The denial of salary increase occurred on July 21, 2003, which is

beyond the 180 day charging period associated with the PHRA for timely claims.  43 P.S.

§959(h).  Accordingly, Defendants request that the Court dismiss this claim as time-barred. (Docket no. 154, at p. 5).

In contrast, Plaintiff maintains that her denial of salary increase on July 21, 2003 was made within the 300 day period prior to the EEOC filing date, as well as within the two or three year limitations period under the EPA.  (Docket No. 152, at p. 6).  Plaintiff further asserts that in July 2003, during the same meeting during which Plaintiff was denied her salary increase, Dr. MacLeod stated that Plaintiff was being "selfish" for seeking a raise and assured her that other physicians had not received raises, failing to disclose that all other physicians had in fact received increases in their base salary through the RVU system.  (Docket No. 152, at p. 7).  Plaintiff did not discover that EMAP physicians, including Dr. Golestan,  received a 10% increase in base salary in 2002 until Plaintiff's expert reviewed the payroll records.  (Docket No. 152, at p. 7).

As stated earlier in this opinion, credibility determinations and the weighing of evidence are for the jury to decide.  Whether Dr. MacLeod failed to disclose or misrepresented that other EMAP physicians received a salary increase is a fact intensive inquiry and the jury must weigh Dr. MacLeod's credibility against that of Dr. Mavrinac.  There are also disputed material issues of fact, as set forth above in this Court's discussion of Plaintiff's RVU claim,  as to whether Defendants actively misled Plaintiff and whether Plaintiff exercised reasonable diligence to discover this claim.  (*See infra* at p. 18-19).  Furthermore, this Court has rejected Defendants' argument that *Ledbetter* bars Plaintiff's denial of salary increase on July 21, 2003 claim since the doctrine of equitable tolling may apply.

Accordingly, the Court DENIES Defendants' Second Motion in Limine to the extent that it seeks to dismiss as untimely Plaintiff's PHRA claim pertaining to her denial of salary increase

on July 21, 2003.

### III. Exclusion of All Testimony and Evidence Pertaining to Untimely, Dismissed Claims

Defendants assert that all background evidence including testimony pertaining to Plaintiff's untimely claims of discrimination should be excluded pursuant to Rules 401, 402, and 403 of the Federal Rules of Evidence, in that it would unduly prejudice Defendants, confuse the issues, and mislead and confuse the jury.  However, the evidence relating to time-barred claims can be introduced as background evidence for establishing the discriminatory nature of the timely claims, such as Plaintiff's termination. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (U.S. 2002).  Furthermore, background evidence may show motive, intent, and a pattern and practice of discrimination.  Accordingly, the testimony and evidence relating to any time-barred claims will be admissible as background with a limiting instruction given to the jury.

This Court hereby DENIES Defendants' Second and Seventh Motions in Limine to the extent they seek to exclude all background evidence pertaining to Plaintiff's untimely claims.  An appropriate order follows.


Dated: October 2, 2007                          BY THE COURT:

                                                *s/ Nora Barry Fischer*
                                                Nora Barry Fischer
                                                United States District Judge

cc: Counsel of Record